UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY DENISE SHARP,

        Plaintiff,                  Case No. 5:14-cv-12829
                                            Magistrate Judge Anthony P. Patti

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
REMAND PURSUANT TO SENTENCE FOUR (DE 12), GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) and
AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL
SECURITY**

**I.      OPINION**

Plaintiff, Mary Denise Sharp, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security

income (SSI) benefits. Currently before the Court is Plaintiff's motion for remand

pursuant to Sentence Four (DE 12), the Commissioner's cross motion for summary

judgment (DE 15), Plaintiff's reply (DE 16) and the administrative record (DE 10).

The parties have consented to my authority.  *See* DEs 17, 18 and 19.  A hearing was noticed for September 17, 2015.  On that date, Plaintiff's counsel (John M. Morosi) and local government counsel (AUSA Laura A. Sagolla) appeared in person, while AUSA Michael L. Henry appeared by telephone.  At the conclusion of the hearing, I took the motions under advisement.  Having considered the motion papers and oral arguments of counsel for the parties, the Court **DENIES** Plaintiff's motion for remand pursuant to Sentence Four (DE 12), **GRANTS** Defendant's motion for summary judgment (DE 15) and **AFFIRM**S the decision of the Commissioner of Social Security, for the reasons stated below

### A.    Background

Plaintiff filed her application for SSI benefits on March 8, 2011, alleging that she has been disabled since January 1, 2001, at age 33.  (R. at 166-174.)  Plaintiff alleges disability as a result of fibromyalgia, back problems, carpal tunnel syndrome in her hands, arthritis, heart condition, pain, depression, asthma and chronic obstructive pulmonary disease (COPD).  (R. at 188-196.)  Plaintiff's application was denied initially on September 13, 2010 and again on August 24, 2011.  (R. at 90-97, 98, 114-117; R. at 99-112, 113, 118-121.)

On September 30, 2011, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 122-124.)  ALJ JoErin O'Leary held a hearing on October 1, 2012, at which Plaintiff and Witness James Sharp

(Plaintiff's husband) appeared and Vocational Expert (VE) Toni McFarland testified.  (R. at 47-89.)  On March 21, 2013, ALJ O'Leary determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10-46.)

On May 13, 2013, Plaintiff requested review of the hearing decision.  (R. at 8-9.)  On June 30, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ O'Leary's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on July 21, 2014, via counsel.  (DE 1.)  Plaintiff is represented here by attorney John M. Morosi.[1]

B.     **The Administrative Decision[2]**

---

[1] Plaintiff was not represented by an attorney at the October 1, 2012 hearing.  R. at 47-89.  On May 15, 2013, attorney John M. Morosi submitted a brief on Plaintiff's behalf to the Appeals Council.  R. at 301-313.  Attorney Morosi also filed the July 21, 2014 complaint in this case.  DE 1.

[2] **Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:**

1.     **Is the claimant engaged in substantial gainful activity?**
2.     **Does the claimant suffer from one or more severe impairments?**
3.     **Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?**
4.     **Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?**

3

ALJ O'Leary rendered her decision on March 21, 2013. (R. at 10-46.) At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2011,[3] the date of her application. (R. at 15.)

At Step 2, the ALJ found that Plaintiff had the following severe impairments: chronic pain syndrome, fibromyalgia, myalgias, migraine headaches, mild cervical degenerative disc disease, bilateral carpal tunnel syndrome, bilateral epicondylitis, asthma, status-post three myocardial infarctions, sensorineural hearing loss, obesity, and dysthymia. (R. at 15-18.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 18-22.)

At Step 4, after an *incredibly thorough* review of the Plaintiff's medical records, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work with the following exceptions: she is able to frequently, but not constantly, perform handling and fingering; should not climb ladders, ropes

---

**5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?**

*See* **20 C.F.R. §404.1520(a)(4);** *see also Hensley v. Astrue*, **573 F.3d 263, 264 (6th Cir. 2009);** *Foster v. Halter*, **279 F.3d 348, 354 (6th Cir. 2001).**

[3] In the instant case, Plaintiff filed her application on March 8, 2011. (R. at 166-174.) This report assumes the discrepancy is a typographical error.

4

or scaffolds, kneel, or crawl; must avoid extremely loud environments to preserve remaining hearing, defined as environments such as a foundry; must avoid unprotected heights or dangerous moving mechanical parts; must avoid concentrated exposure to dusts, odors, fumes, and other pulmonary irritants; and is limited to simple, routine tasks.  (R. at 22-38.)  Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work.  (R. at 38-39.)

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 39-40.)

### C.    Issues and Sub-Issues

In her motion for remand, Plaintiff asserts that the ALJ erred in three ways, namely:  (1) By failing to address her moderate limitations in consistency, persistence or pace (CPP) in either the hypothetical question posed to the VE and/or the RFC; (2) By failing to apply the Treating Source Rule; and (3) By failing to give Plaintiff, as a *pro se* litigant, the opportunity to (a) object to the VE's credentials and/or voir dire the VE, and (b) cross-examine the VE.

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

5

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in

the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.     Analysis**

**1.     The ALJ adequately addressed Plaintiff's CPP.**

Plaintiff's first statement of error is that the ALJ's RFC assessment and hypothetical to the VE do not address Plaintiff's moderate limitations in concentration, persistence or pace.  (*See* DE 12 at 14-17.).[4]  By way of background, the SSA has identified "four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; *concentration, persistence, or pace*; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3) (emphasis added).  Moreover:

---

[4] At the outset, I note the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. at 23.)  Plaintiff does not challenge this credibility determination in her January 8, 2015 motion.  (*See* DE 12 at 8, 13.)

> When we rate the degree of limitation in the first three functional
> areas (activities of daily living; social functioning; and *concentration,*
> *persistence, or pace*), we will use the following five-point scale:
> None, mild, *moderate*, marked, and extreme. When we rate the degree
> of limitation in the fourth functional area (episodes of
> decompensation), we will use the following four-point scale: None,
> one or two, three, four or more. The last point on each scale represents
> a degree of limitation that is incompatible with the ability to do any
> gainful activity.

20 C.F.R. § 404.1520(c)(4) (emphasis added).

At Step 3, ALJ O'Leary determined that Plaintiff has *moderate* difficulties

with regard to *concentration, persistence or pace*.  Here, the ALJ relied upon

several items, including certain pages of Dr. Deskovitz's August 9, 2011

evaluation (R. at 493-498) and some notes from Gregory J. Dardas, M.D. (R. at

625-626 (December 5, 2011), 628-629 (September 19, 2011)).  (R. at 21.)  The

ALJ referred to each of these at Step 4.  *See*, *i.e.*, R. at 27-28, 33-34, 35-36.

Ultimately, as set forth above, ALJ O'Leary's RFC determination included a

limitation of "simple, routine tasks."  (R. at 22-38.)

Nonetheless, Plaintiff claims that the ALJ "totally ignored" and "completely

failed to address" her moderate difficulties with regard to CPP when questioning

the VE and determining Plaintiff's RFC, "despite a rather exhaustive review of the

medical record…."  DE 12 at 15, 16.

### a.    Hypothetical questions to the VE

8

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and <u>mental impairments</u>." *Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 516 (6th Cir. 2010).  *See also Potter v. Commissioner of Social Sec.*, 223 F.App'x 458, 464 (6th Cir. 2007) (quoting *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987)); *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

ALJ O'Leary's October 1, 2012 hypothetical to VE McFarland included a limitation of "simple, routine tasks."  R. at 85.  According to Plaintiff, the ALJ's hypothetical limitation of "simple, routine tasks[,]" does not address her moderate CPP impairments.  DE 12 at 15, R. at 85.  Here, Plaintiff refers to "physical limitations and mental limitations," including her testimony about chronic pain, frequently laying down and napping, and an inability to function on "bad days."  DE 12 at 15; *see also, i.e.*, R. at 74, 75, 76.  In addition, Plaintiff contends the medical record is "replete with references" to diagnostic testing and diagnoses of chronic pain syndrome, fibromyalgia and myalgia, each of which the ALJ found to be a severe impairment, <u>yet fails to identify these references</u>.  DE 12 at 15-16, R. at 15.  At oral argument, her counsel shifted the focus squarely on to the *physical* side of CPP. When asked for record support, he pointed to Dr. Herdzik's report at R.

505, which is admittedly based upon Plaintiff's own reporting, rather than objective diagnostic testing, and was permissibly rejected as such by the ALJ.

The Commissioner points out that the ALJ assigned great weight to Dr. Hill's August 23, 2011 opinion, which included that Plaintiff retained the mental residual capacity to perform one and two step tasks on a sustained basis (R. at 35, 110), and acknowledged Dr. Dardas's September 19, 2011 and December 5, 2011 evaluations, which included that attention and concentration were unremarkable and fund of knowledge was normal (R. at 34, 625, 628).  *See* DE 15 at 15.

In reply, setting aside an alleged improper reliance by the ALJ upon the opinion of state examiner Wayne Hill, Ph.D., Plaintiff contends that the ALJ focused on the *mental limitations* and overlooked CPP limitations associated with pain and fatigue.  (DE 16 at 2-3.)  Again, Plaintiff urges that there "is overwhelming evidence of record supporting CPP limitations associated with [her] pain and fatigue[,]" yet fails to supply anything more than a reference to the single page of Dr. Herdzik's report (R. at 505), based largely on Plaintiff's self-reporting. Here, Plaintiff refers to *Ealy* and *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) (Friedman, C.J., accepting and adopting report and recommendation of Pepe, M.J.) ("while finding that Plaintiff has a 'moderate limitation in her ability to concentrate, persist and keep pace,' the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more

than simple, routine, unskilled work'[].  While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE.").[5]  Plaintiff contends that, by ignoring the impact of her physical impairments on her CPP, ALJ O'Leary "understated the restriction applicable to the Plaintiff and thus fashioned an inadequate RFC[,]" which rendered the VE's opinion irrelevant.  DE 16 at 3.

However, as this Court has recognized:  "The court in *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001), rejecting the notion that a hypothetical question must contain talismanic language, found that a question was sufficient provided that it encompassed the plaintiff's relevant limitations:  'The ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment.'"  *Street v. Commissioner of Social Security*, 390 F.Supp.2d 630, 638 (E.D. Mich. 2005) (Edmunds, J., accepting report and recommendation of Whalen, M.J.).

For the reasons discussed in more detail below, Plaintiff has not shown that the hypothetical question posed to the VE – specifically the limitation of "simple, routine tasks" - inaccurately portrays Plaintiff's physical and mental impairments; therefore, the VE's response may constitute substantial evidence in support of the ALJ's determination that there is work Plaintiff can perform.

---

[5] "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. *** Each of these jobs seems to require a degree of sustained concentration, persistence and pace. ***Thus, the ALJ's hypothetical question is insufficient."  *Edwards*, 383 F.Supp.2d at 930-931.

### b.    RFC determination

"SSR 96–8p requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities of the claimant in determining a claimant's RFC. Although SSR 96–8p requires a "function-by-function evaluation" to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Commissioner of Social Sec.*, 30 F.App'x 542, 547 (6th Cir. 2002).

As with the hypothetical posed to the VE, the Step 4 RFC assessment includes a limitation of "simple, routine tasks." (R. at 85, R. at 22). Citing *Edwards* and *Ealy*, Plaintiff maintains that the ALJ's findings of moderate difficulties with regard to concentration, persistence or pace "would equal a determination that [Plaintiff] would *often* experience difficulties sustaining pace." DE 12 at 17 (emphasis added).

However, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Schalk v. Commissioner of Social Sec.*, No. 10-13894, 2011 WL 4406824, *11 (E.D. Mich. Aug. 30, 2011) (report and recommendation of Michelson, M.J.) (citations

12

omitted)  *See also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL

3905375, *2-*3 (E.D. Mich. Sept. 30, 2010) (Ludington, J., adopting report and

recommendation of Hluchaniuk, M.J.);[6] *Swadling v. Astrue*, No. 11-10421, 2012

WL 3030154, *6 (E.D. Mich. June 26, 2012) (report and recommendation of

Majzoub, M.J.),[7] *Carlin v. Commissioner of Social Sec.*, No. 12-10222, 2013 WL

639338, 7 (E.D. Mich. Jan. 11, 2013) (report and recommendation of Randon,

M.J.).[8]

    In support of her position that her severe impairments negatively impact her

ability to sustain persistence and pace for an eight-hour work day, regardless of

mental health, Plaintiff points to the standing and walking limitations referenced in

the September 26, 2012 Medical Source Statement by Dr. Monika Herdzik, M.D.,

---

[6] "There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."  *Lewicki*, 2010 WL 3905375 at 3.

[7] "While Plaintiff does point to cases from this district that appear to support his argument that an ALJ must craft a hypothetical question that factors in moderate limitations in concentration, persistence, or pace, courts in this district have also held that even when an ALJ does not explicitly address moderate limitations in concentration, persistence, or pace, and only references "unskilled work," remand is not necessary when substantial evidence supports the hypothetical question."  *Swadling*, 2012 WL 3030154 at 6.

[8] "In this case, the ALJ's RFC limitation of simple, routine work accurately reflects state reviewing psychologist Dr. Judy Strait's opinion that Plaintiff was 'moderately' limited with respect to concentration, persistence and pace."  *Carlin*, 2013 WL 639338 at 7.

including that Plaintiff has "chronic pain" and "cannot continue a task without taking a break." (DE 16 at 3, R. at 500-505.) Plaintiff argues that these limitations were "specifically stated" by Dr. Herdzik; however, and contrary to this assertion, the physician in no fewer than four places noted that these limitations were "Per patient." She also did not identify any objective, diagnostic tests which confirmed them, even where the form specifically asks, "What are the *medical findings* that support this assessment?" (R. at 501, 503-505) (emphasis added). Notably, the RFC and the hypothetical question posed to the VE fully adopt Dr. Herdzik's statements regarding postural activities and environmental limitations. (R. at 22, 38, 84-85, 503-504.)

However, setting aside the weight assigned to Dr. Herdzik's September 26, 2012 assessment, which is addressed below, I am instructed and persuaded by the Sixth Circuit's clear distinctions articulated in *Smith-Johnson v. Commissioner of Social Sec.*, 579 F.App'x 426 (6th Cir. 2014), which also apply here:

> Smith–Johnson's first challenge concerns her concentration, persistence, or pace. She relies on *Ealy,* 594 F.3d 504, to support her argument that more specific limitations should have been included in the hypothetical to the VE. Yet, *Ealy* is distinguishable from this case. In *Ealy,* the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Ealy,* 594 F.3d at 516. In that RFC assessment, however, the ALJ included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings." *Id.* That RFC finding was included in the hypothetical to the VE. *Id.* This court held that the RFC assessment and the hypothetical did not adequately reflect the

claimant's limitations because it truncated the doctor's *specific restrictions*. *Id.*

Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability "to maintain attention and concentration for extended periods." Unlike in *Ealy,* Dr. Kriauciunas [state agency consultant] did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks. Instead, *Dr. Kriauciunas plainly determined that Smith–Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods."* In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations. The ALJ thus did not fail to include a restriction on her ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting her to routine and repetitive tasks.

*Smith-Johnson*, 579 F.App'x at  436 -437 (emphasis added).

Likewise, in the case at bar, ALJ O'Leary assigned great weight to the assessment of Dr. Hill, who had opined that Plaintiff "retains the *mental* residual capacity to perform one and two step tasks on a sustained basis."  (R. at 35, 110 (emphasis added)).  Moreover, Gregory J. Dardas, M.D., apparently a neurologist, noted on December 5, 2011 and again on September 19, 2011 that Plaintiff's attention and concentration were "unremarkable," each time further observing that her "fund of knowledge is normal."  (R. at 625, 628.)  Additionally, with respect to alleged CPP deficiencies which are physical (as opposed to mental) in nature, Plaintiff had multiple opportunities in her briefing and at oral argument to point out

15

definitive record support for her claimed disability in this area, in response to which she repeatedly referred to page 505 of the record, a portion of Dr. Herdzik's report which was justifiably discounted by the ALJ for a lack of objective medical evidence, as it was based largely upon Plaintiff's own subjective self-reporting. Her counsel also made unspecified reference to treatment provided by Drs. Binsfield and Duff, without record citation and without demonstrating how these support her claimed CPP disability. The ALJ appropriately considered these records for what they were worth.[9]

Furthermore, there is sufficient case law in this district to support a finding that a limitation to unskilled work does reflect a claimant's moderate deficiencies in CPP. *See Bohn-Morton v. Commissioner of Social Sec.*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005) (Rosen, J.) (concluding that a limitation to unskilled

---

[9] *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.... Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact.") (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 916 n. 7 (5th Cir.1992)).  Nevertheless, the Court has reviewed those portions of the record *referenced by the ALJ* with respect to those two physicians (R. at 35-37), which reveal that Dr. Duff treated Plaintiff in the emergency room for sinus related ailments in 2011 (R. at 561- 576) and that Dr. Binsfield performed right and left carpal tunnel release surgeries on her in 2008 and 2012, respectively, with seemingly good prognoses. (R. at 545, 559-560.)

work adequately reflected Plaintiff's moderate deficiencies in CPP); *Berkowski v. Comm'r of Soc. Sec.*, 652 F. Supp. 2d 846, 860 (E.D. Mich. 2009) (opinion and order of Duggan, J., regarding report and recommendation of Majzoub, M.J.) (declining to remand where the plaintiff failed to reference "*any specific* work-related mental limitation.. . . which the ALJ failed to consider, failed to include in the RFC" or requiring a "more restrictive limitation than that set forth in the RFC."). Courts in this district have eschewed an inflexible, *per se* rule that an RFC finding must expressly refer to the claimant's moderate limitations in CPP, and have instead advocated a "case-by-case determination" as to whether the ALJ's findings have been appropriately "harmonized and incorporated into" the RFC and hypothetical questioning of the VE. *Bohn-Morton* at 806-807.

Here, the ALJ thoroughly analyzed the record and made extensive observations about the plaintiff's ability to maintain CPP, noting that, "she was able to care for personal needs without reminders, drive, play cards, shop in stores, pay bills, count change… use a money order" and care for her grandmother. (R. at 21 and citations contained therein.)  The ALJ further noted that no difficulties in pace and persistence were alleged on this application – while acknowledging that difficulties in concentration were – and that in her prior application, Plaintiff had also reported being "able to drive, shop, handle money, and play cards or dice

games, which are activities that require at least a fair amount of concentration, persistence, or pace." (*Id.*)[10]

   To summarize, ALJ's RFC findings were well supported by the record. The ALJ did find that Plaintiff had moderate limitations in CPP, and these were harmonized and incorporated into the RFC and in the hypothetical to the VE. (R. at 17, 21-22, 84-85.)   To the limited extent that Plaintiff relies upon any medical records which would allegedly demonstrate a more severe CPP limitation, these records are lacking in objective, diagnostic evidence and rely upon the claimant's self-reporting. The ALJ found that Plaintiff's credibility was wanting, and that finding has not been challenged on appeal. (R. at 35.)  The ALJ's attribution of diminished weight to such medical opinions, as discussed below, was thus appropriate, and in any case well within the ALJ's authority and discretion. Thus, there is substantial evidence for ALJ O'Leary's RFC determination that Plaintiff is limited to "simple, routine tasks," and this determination adequately addressed any

---

[10] *Moreover, while State of Michigan Disability Determination Service report by Mark A. Deskovitz, Ph.D., mentions that Plaintiff would have "difficulty" in sustaining work as of August 2011, and mentions difficulty on "some" memory tasks and "some difficulty sleeping recently," it does not state that she is unable to work, and does note that on a typical day she is able to "wake up, collect the eggs from the chickens, feed the rabbits, [and ] feed the dogs…." (R. at 493-498.) Likewise, her MidMichigan Health record from July 3, 2012, discussing chest pain and an apparent asthma or panic attack notes that, "Her symptoms do not limit her activities."  (R. at 591.)*

limitations in CPP.  Plaintiff has failed to demonstrate reversible error in this

regard.

> **2.     The ALJ properly addressed the opinion of treating physician Dr. Herdzik's opinion.**

By way of background, treating physician Monika Herdzik, M.D., evaluated

Plaintiff on several occasions throughout 2011 and 2012.  *See* Medical Records

dated January 31, 2011 (R. at 692); November 9, 2011 (R. at 616-618); December

16, 2011 (R. at 613-615); March 2, 2012 (R. at 609-612); March 23, 2012 (R. at

599-603); June 7, 2012 (R. at 508-510, 595-598); September 26, 2012 (R. at 500-

505) and October 3, 2012 (R. at 633-634).

Among these evaluations is Dr. Herdzik's September 26, 2012 SSA Medical

Source Statement of Ability to do Work-Related Activities (Physical).  (R. at 500-

505.)  Specifically, Dr. Herdzik opined that Plaintiff could occasionally lift/carry

up to 20 pounds.  (R. at 500.)  Dr. Herdzik also somewhat inconsistently noted

that, *per patient*, Plaintiff could:  sit for 8 hours at one time without interruption

but sit for 30 minutes total in an 8 hour work day; stand for 30 minutes total in an

eight hour work day; walk less than 60 minutes at one time without interruption

and walk less than 30 minutes total in an 8 hour work day.  (R. at 501.)  Moreover,

Dr. Herdzik noted Plaintiff could frequently feel with both hands and occasionally

reach, handle, finger and push/pull with both hands.  (R. at 502.)  Dr. Herdzik went

on to state that Plaintiff had "chronic pain . . . cannot continue a task without taking a break[,]" and "cannot read."  (R. at 505.)

At Step 4, ALJ O'Leary accorded "limited weight" to Dr. Herdzik's assessment, noting that it "is generally not consistent with weight of the medical evidence of record, including objective examination findings, diagnostic testing, and the longitudinal treatment record."  The ALJ continued, "[a]dditionally, the [RFC] form indicates that a portion of the assessment was based on the claimant's own report, rather than an objective assessment of the claimant's abilities and limitations."  (R. at 36.)

Plaintiff's second statement of error is that the ALJ's decision does not give good reasons for rejecting the treating source opinion of Dr. Herdzik, as required by 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) and SSR 96-2P.  (DE 12 at 17-20.).  An ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(d)(2).  "Although the regulations instruct an ALJ to consider [certain] factors [when weighing medical opinions], they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis."  *Francis*, 414 F.App'x 804-805 (citing § 404.1527(d)(2)).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).  According to Plaintiff, ALJ O'Leary failed to support her assignment of limited weight to Dr. Herdzik's opinion with citation to relevant evidence, in contravention of 20 C.F.R. § 404.1527(d)(2) and *Rogers*, 486 F.3d 243.  (DE 12 at 19.)  However, the Court agrees with the Commissioner that the ALJ properly discounted Dr. Herdzik's opinion.  (DE 15 at 16.)  First, the ALJ's review of the medical record was superlatively thorough and well-organized.  (*See* R. at 23-34.)  For example, she first opined that Plaintiff had

limitation arising from chronic pain syndrome, fibromyalgia, myalgias, mild

cervical degenerative disc disease, migraine headaches, bilateral carpal tunnel

syndrome, and bilateral epicondylitis." (R. at 23-30).[11] She then discussed

limitations arising from asthma (R. at 30-31), Plaintiff's cardiovascular history (R.

at 31-32), limitations arising from sensorineural hearing loss (R. at 32), Plaintiff's

obesity (R. at 33) and limitations arising from dysthymia (R. at 33). Among other

records, the ALJ specifically cited a July 3, 2012 evaluation. Although this portion

of it was not quoted by the ALJ, this report notes that Plaintiff's symptoms "do not

limit her activities[.]" (R. at 32, 591.)

Second, the ALJ's discussion of the opinion evidence is also thorough and

well organized. Namely, she referred to the records of Wayne Hill, Ph.D. (R. at

110); Dr. Deskovitz (R. at 497); Monika Herdzik, M.D. (R. at 500-505); Bradley

Binsfeld, D.O. (R. at 545-546); and John Duff, M.D. (R. at 572). As to these, she

specified the weight assigned to each. (R. at 35-37.). For example, the August 23,

2011 mental RFC assessment by Wayne Hill, Ph.D. opined that Plaintiff retained

the *mental* residual capacity to perform one and two step tasks on a sustained basis.

(R. at 109-110.) ALJ O'Leary gave great weight to Dr. Hill's assessment. (R. at

35.)

---

[11] At length discussing Dr. Bruma's January 2011 and June 2012 notes. (R. at 25-26, 29.)

Third, as noted above, ALJ O'Leary explained that Dr. Herdzik's September 26, 2012 assessment was partially completed by Connie Posigian, P.T.;[12] was generally inconsistent with the weight of the record medical evidence; and was based in part on Plaintiff's own, subjective report (R. at 36, R. at 57, R. at 500-505, R. at 631-632; *see also* R. at 633-634). *See Francis v. Commissioner Social Sec. Admin.*, 414 F.App'x 802, 804 (6th Cir. 2011) ("Dr. Killefer's pain-related statement, on the other hand, is not a 'medical opinion' at all—it merely regurgitates Francis's self-described symptoms.").

Fourth, my conclusion is unchanged by Plaintiff's contention that the ALJ did not critically assess the evidence. DE 16 at 4. "The burden rests with the claimant through step four." *Harris v. Commissioner of Social Sec.*, 598 F.App'x 355, 361 n.7 (6th Cir. 2015). Although Plaintiff replies that she "cited to the similarities between the doctor's practice notes and the doctor's opinions[,]" DE 16 at 4, the argument portion of her January 8, 2015 motion makes only one express citation to the medical record – namely the concluding page of Dr. Herdzik's September 26, 2012 Medical Source Statement of Activity to do Work-Related Activities (Physical). *See* DE 12 at 11, 20, R. at 505.

---

[12] Under the SSA regulations, evidence from a physical therapist is not an "acceptable medical source." Rather, it is considered an "other source." 20 C.F.R. § 404.1513, 20 C.F.R. § 416.913 ("Medical and other evidence of your impairment(s).").

To be sure, in the statement of the case portion of her January 8, 2015 motion, Plaintiff expressly cited Lakeshore Spine & Pain Larisa Bruma, M.D.'s January 26, 2011 and Great Lakes Medical Dr. Bruma's June 22, 2012 notes (R. at 444-446, 621-623), as well as Mark A. Deskovitz, Ph.D.'s August 9, 2011 State of Michigan Disability Determination Service evaluation (R. at 493-498.).  (*See* DE 12 at 10-11.).  Also, during the September 17, 2015 hearing, Plaintiff's counsel vaguely referred to Dr. Binsfeld and Dr. Duff, albeit without reference to any specific findings or records.  As outlined above, ALJ O'Leary cited Deskovitz, Herdzik, Binsfeld and Duff in her Step 4 decision of the opinion evidence.  (R. at 35-37, 497, 500-505, 545-546 and 572.)  Moreover, the ALJ cited Bruma within her Step 4 discussion of the medical record.  (R. at 25-26, 29, 444-446, 621-623.)  Thus, it cannot be said she did not consider these reports before forming her RFC assessment.

### 3.  Plaintiff was notified of her right to question witnesses, such as the VE; moreover, she has not shown that any alleged error harmed her.

Plaintiff's third statement of error is that the ALJ failed to allow Plaintiff an opportunity to object to the VE's credentials and did not offer Plaintiff an opportunity to cross-examine the VE.  (*See* DE 12 at 20-22.)  To the extent these arguments challenge the ALJ's Step 5 determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. at 39-

40), the burden shifts to the Commissioner. "[A]t step five of the inquiry, . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Importantly, the July 16, 2012 and September 10, 2012 Notices of Hearing state that a VE will testify at the hearing and inform Plaintiff that she may question witnesses. (R. at 136-141, 154-155.). Therefore, Plaintiff was twice notified in writing of her right to question witnesses, such as the VE. *See Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290-291 (6th Cir. 2014), (DE 15 at 21.)[13]

---

[13] A quick note about Plaintiff's reading proficiency, as mentioned by Plaintiff's counsel at oral argument, is in order. In her June 6, 2010 function report, when asked about following written instructions, Plaintiff responded, "I have a hard time with reading and [knowing] what it means[.]" (R. at 197-204 [Ex. B3E].) In her April 22, 2011 SSA Function Report, Plaintiff noted difficulty with memory, completing tasks, concentration, understanding and following instructions. (R. at 262-269 [Ex. B10E].) Also, the March 15, 2011 field office disability report notes that Plaintiff can read and write, but she has comprehension issues. (R. at 231 [Ex. B7E].) Additionally, in her September 26, 2012 notes, Dr. Herdzik stated, "Patient cannot read." (R. at 505.) However, the May 2010 and March 2011 disability reports each represent that Plaintiff can read and understand English. (R. at 188 [Ex. B2E], 230 [Ex. B7E].) And, in the June 2010 third party function report, Plaintiff's husband reported that Plaintiff can follow a recipe well. (R. at 218 [Ex. B5E].) Moreover, her neurologist notes that her "fund of knowledge is normal." (R. at 625, 628.) Thus, the Court is not convinced that Plaintiff was unable to read the notice, especially since Plaintiff appeared at the October 1, 2012 hearing in response to it. (R. at 47-89.) Therefore, it cannot be said that she was unable to appreciate its import, and the Court assumes that Plaintiff was able to read and understand the hearing notices sent to her. Even if Plaintiff were unable to read the September 10, 2012 notice of hearing (R. at 152-162), this, alone, is not a basis

### a. Any failure to allow Plaintiff an opportunity to object to the VE's credentials was harmless.

VE McFarland's resume is part of the administrative record. (R. at 147). During the October 1, 2012 hearing, the ALJ confirmed with VE McFarland that her resume properly reflected her professional qualifications. (R. at 82.) She also asked VE McFarland to briefly describe her qualifications, because Plaintiff was not represented by counsel. (R. at 82-83.)

According to Plaintiff, she "was never afforded the opportunity to voir dire the VE, object to the VE's qualifications or cross-examine the expert. It cannot be assumed she would have declined these opportunities if presented." DE 12 at 21. Among other cases, Plaintiff relies upon *Calvin v. Chater*, 73 F.3d 87, 91 (6th Cir. 1996).[14]

_____

for remaining idle. *See, i.e., Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims."), *Anderson v. City Finance Co.*, No. 3:02-CV-1074-LN, 2003 WL 21788947 (S.D. Miss. July 14, 2003) ("a plaintiff's inability to read does not excuse his failure to inform himself as to the contents of the contracts he signs."). If she did have trouble understanding the instructions contained in the hearing notice, she should have either requested assistance from someone or pointed out to the ALJ that she was unable to comprehend the remaining contents of the notice. The ALJ's kindness and patience toward Plaintiff is manifest in the transcript, and there is no doubt that she would have explained the process further, if asked.

[14] "[S]ocial security hearings must conform to the requirements of the Administrative Procedure Act." *Calvin v. Chater*, 73 F.3d 87, 91 (6th Cir. 1996). The Administrative Procedure Act is codified at 5 U.S.C. §§ 551-559, 701-706, 1305, 3105, 3344, 4301, 5335, 5372, 7521. "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to

However, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009). Here, the Court agrees with the Commissioner that Plaintiff has not shown that if she had been invited to challenge the VE's qualifications the result may have been different. DE 15 at 21-22.

> **b.** **Any failure to offer Plaintiff an opportunity to cross-examine the VE was harmless.**

According to Plaintiff, "[t]here can be no argument of waiver in the instant case as [she] was never afforded the opportunity to cross-examine the vocational expert." DE 12 at 21. In support of her argument regarding the ALJ's failure to accord her the right to cross-examine the VE, Plaintiff relies in part upon *Glenn v. Commissioner of Social Sec.*, 763 F.3d 494, 499 (6th Cir. 2014), wherein the Sixth Circuit stated: "[The ALJ's] failure to advise Glenn of her right to cross-examine the VE was error under 20 C.F.R. § 404.1545(e) and caused prejudice because the VE's opinion that Glenn could work as a cashier or cafeteria attendant did not take into account her moderate limitations on interacting with the public." *Glenn v. Commissioner of Social Sec.*, 763 F.3d 494, 499 (6th Cir. 2014); (DE 16 at 4-5.)

---

conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C.A. § 556(d).

However, I find the Commissioner's reliance upon *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 291 (6th Cir. 2014) to be more instructive and directly on point:

> [T]he ALJ did not reversibly err by failing to explicitly invite Thomas to cross-examine the vocational expert. Thomas had been notified in writing that she could speak to the expert, the ALJ gave her the opportunity to speak after the expert testified, and Thomas has not identified any significant inaccuracy in the expert's testimony or any significant testimony that she could have elicited.

*Thomas v. Commissioner of Social Sec.*, 550 F.App'x 289, 290-291 (6th Cir. 2014).

As previously noted, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *See Shinseki,* 556 U.S. at 409. Here, the Court agrees with the Commissioner that, even if the ALJ should have orally reminded Plaintiff of the previously advised fact that she was entitled to cross-examine the VE, Plaintiff has not shown that the omission was prejudicial. In other words, Plaintiff has not shown what inaccuracies, if any, there were in the VE's October 1, 2012 testimony (DE 15 at 21), nor has she specified the testimony she believes she could have elicited from the VE at the October 1, 2012 hearing. Finally, the ALJ did pose a second hypothetical, including limitations of "unable to maintain regular attendance" resulting in being "absent from work more than four times per month," to which the VE responded there would be no work that such an individual could perform. (R. at 85-86.)

28

Thus, the VE's testimony regarding the effect of an inability to maintain regular attendance was before the ALJ when she arrived at her decision.

## II.   ORDER

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Plaintiff's motion for remand pursuant to Sentence Four is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: September 30, 2015        s/Anthony P. Patti
                                                 Anthony P. Patti
                                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2015, electronically and/or by U.S. Mail.

                                                 s/Michael Williams
                                                 Case Manager for the
                                                 Honorable Anthony P. Patti